******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

ARLEEN BEGER *v.* CITY OF BRISTOL ET AL.
(AC 47244)

Clark, Seeley and DiPentima, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment rendered after its granting of the defendants' motion for summary judgment on her complaint asserting a claim pursuant to the municipal highway defect statute (§ 13a-149), for personal injuries she sustained when she fell at the defendant city's transfer station. She claimed that the court improperly concluded that the walkway where she fell did not constitute a public highway for the purposes of § 13a-149. *Held*:

The trial court did not err in granting the defendants' motion for summary judgment, as, pursuant to *Read* v. *Plymouth* (110 Conn. App. 657), because the transfer station was accessible only to the defendant's residents who had purchased a permit and, therefore, was confined to a group whose eligibility was gauged by predetermined criteria, it lacked the essential feature that would qualify it as open to public use and, thus, the plaintiff's claim did not fall within the purview of § 13a-149.

Argued April 16—officially released June 10, 2025

*Procedural History*

Action to recover damages for personal injuries sustained as a result of, inter alia, an allegedly defective municipal highway, and for other relief, brought to the Superior Court in the judicial district of New Britain, where the court, *Young, J.*, granted the defendants' motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Mark A. Balaban*, for the appellant (plaintiff).

*Thomas R. Gerarde*, with whom was *Tyler J. Carroll*, for the appellees (defendants).

*Opinion*

CLARK, J. In this personal injury action, the plaintiff, Arleen Beger, appeals from the summary judgment rendered by the trial court in favor of the defendants, the

city of Bristol (city), Raymond Rogozinski, and Craig Kasparian. On appeal, the plaintiff claims that the trial court improperly granted the defendants' motion for summary judgment as to the first count of her complaint, which asserted a claim against the city under General Statutes § 13a-149,[1] also known as the municipal highway defect statute. We disagree and affirm the judgment of the court.

The following procedural history is pertinent to this appeal. The plaintiff commenced this action by way of a three count complaint on September 27, 2022. In her complaint, the plaintiff alleged that, on September 30, 2020, she traveled to the city's transfer station to dispose of certain waste materials and fell on the paved surface of a walkway located directly in front of the transfer station's receptacle bin for cardboard and corrugated waste. She claimed that she had fallen because of a dangerous and defective condition in the walkway that the defendants had failed to remedy. Count one of her complaint asserted a claim against the city under § 13a-149, count two asserted a negligence claim against the city, and count three asserted a negligence claim against Rogozinski and Kasparian, the city's director of public

---

[1] General Statutes § 13a-149 provides: "Any person injured in person or property by means of a defective road or bridge may recover damages from the party bound to keep it in repair. No action for any such injury sustained on or after October 1, 1982, shall be brought except within two years from the date of such injury. No action for any such injury shall be maintained against any town, city, corporation or borough, unless written notice of such injury and a general description of the same, and of the cause thereof and of the time and place of its occurrence, shall, within ninety days thereafter be given to a selectman or the clerk of such town, or to the clerk of such city or borough, or to the secretary or treasurer of such corporation. If the injury has been caused by a structure legally placed on such road by a railroad company, it, and not the party bound to keep the road in repair, shall be liable therefor. No notice given under the provisions of this section shall be held invalid or insufficient by reason of an inaccuracy in describing the injury or in stating the time, place or cause of its occurrence, if it appears that there was no intention to mislead or that such town, city, corporation or borough was not in fact misled thereby."

works and streets superintendent, respectively. The plaintiff attached to the complaint a copy of a written notice describing her injury, which had been served on the city on December 28, 2020, pursuant to the requirements of § 13a-149. The notice stated in relevant part: "[The plaintiff] was at the transfer station dropping off cardboard. She fell after she put the cardboard into the machine. There was a hole, and she lost her balance and landed on her right side, rolling over onto her right side. The area identified was located directly in front of a cardboard waste receptacle."

On February 1, 2023, the defendants filed an answer and special defenses in which they claimed, inter alia, that count one of the complaint failed to state a claim on which relief could be granted. Subsequently, on May 31, 2023, the defendants filed a motion for summary judgment as to all counts of the complaint. In their motion, the defendants argued in relevant part that, in light of this court's decision in *Read* v. *Plymouth*, 110 Conn. App. 657, 955 A.2d 1255, cert. denied, 289 Conn. 955, 961 A.2d 421 (2008), the plaintiff's claim did not fall within the purview of § 13a-149 because the area where the plaintiff allegedly had fallen did not constitute a public highway. In support of this claim, the defendants attached to their motion an affidavit from Rogozinski. Rogozinski's affidavit stated in relevant part that the area where the plaintiff claimed to have fallen was located within the perimeter of the transfer station; that the transfer station was only open Monday through Friday from 7:15 a.m. to 2:15 p.m., and Saturday from 7:30 a.m. to 1 p.m.; that outside of those hours, the gates to the transfer station were shut and locked; that only residents who purchased a transfer station permit were allowed to enter or use the transfer station, and that they must show their permit to be allowed access; that permits were available for residents to purchase for $40; and that residents with a permit were

permitted to use the transfer station only during its hours of operation.

The plaintiff filed a memorandum in opposition to the defendants' motion for summary judgment on September 8, 2023. In her memorandum, the plaintiff argued generally that whether the area where she had fallen constituted a public highway presented a question of fact that "could not be determined on the basis of the record submitted . . . [and would] more appropriately [be] answered by a jury after the presentation of evidence"; she did not, however, dispute the specific factual assertions in Rogozinski's affidavit described herein. Instead, she contended that the various access restrictions on the use of the transfer station were de minimis and that "these minor restrictions . . . under the facts and circumstances herein ought not defeat an otherwise viable personal injury claim . . . on the somewhat dubious notion that all roads or walkways at [the] transfer station are not public and within the ambit of the defective highway statute." The plaintiff attached several exhibits to her memorandum, including a map of the transfer station marked with various arrows delineating a route through the transfer station that was published on the city's website. This map, she argued, showed that the city "invited, encouraged, and/ or should have reasonably anticipated" that members of the public would pass through the transfer station to dispose of their refuse.

The defendants filed a reply to the plaintiff's memorandum on September 19, 2023. On December 22, 2023, the court, *Young, J.*, issued a memorandum of decision granting the defendants' motion for summary judgment as to all counts of the complaint. With respect to count one,[2] the court concluded that, under this court's holding in *Read*—which, the court noted, presented "a

---

[2] On appeal, the plaintiff does not challenge the court's granting of the defendants' motion for summary judgment as to counts two or three of her complaint.

remarkably similar fact pattern" to the present case—the access restrictions on the transfer station placed the plaintiff's claim outside the purview of § 13a-149. The court explained that the transfer station did not qualify as a "highway" under § 13a-149 because, according to the undisputed facts in the record, the transfer station "was not open to the indefinite public, nor open at all times," but, rather, was "restricted in accessibility both in limitation of users and limitation of hours." This appeal followed.

On appeal, the plaintiff claims that the court improperly concluded that the walkway in the transfer station where she fell did not constitute a public highway for the purposes of § 13a-149. We disagree.[3]

The following standard of review and legal principles are relevant to our review of the plaintiff's claim. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A party moving for summary judgment is held to a strict standard. . . . To satisfy [its] burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." (Internal quotation marks omitted.) *Carty* v. *Merchant 99-111 Founders, LLC*, 227 Conn. App. 683, 690, 323 A.3d 414 (2024).

"The standard of review of a trial court's decision to [render] summary judgment is well established. [W]e

---

[3] The defendants argue, as an alternative ground for affirming the court's judgment, that the court also properly rendered summary judgment against the plaintiff on her § 13a-149 claim because she was not using the area where she fell as a traveler. We do not reach the merits of this argument because, for the reasons we discuss herein, we agree with the court that the area where the plaintiff fell was not a public highway for purposes of § 13a-149.

must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . . This court's review of the trial court's decision to [render] summary judgment in favor of the defendants is plenary. . . .

"Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the [trial] court under Practice Book § [17-45]. . . . The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist. . . . To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . [that] contradict those stated in the movant's affidavits and documents." (Citation omitted; internal quotation marks omitted.) *Cazenovia Creek Funding I, LLC* v. *White Eagle Society of Brotherly Help, Inc., Group 315, Polish National Alliance,* 351 Conn. 722, 730–31, 333 A.3d 508 (2025).

"Historically . . . municipalities enjoyed immunity for injuries caused by defective highways under common law, due in good part to the miles of streets and highways under their control. . . . The [municipal]

highway defect statute, § 13a-149 is a legislative exception to the immunity that municipalities enjoyed at common law and, as such, must be strictly construed. . . .

"[A] highway defect is [a]ny object in, upon, or near the traveled path, which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon, or which, from its nature and position, would be likely to produce that result. . . . Furthermore, a highway is defective within the meaning of § 13a-149 when it is not reasonably safe for public travel, and the term public travel refers to the normal or reasonably anticipated uses that the public makes of a highway in the ordinary course of travel. . . .

"According to General Statutes [§ 14-1 (46)], a highway includes any state or other public highway, road, street, avenue, alley, driveway, parkway . . . place [or dedicated roadway for bus rapid transit service], under control of the state or any political subdivision of the state, dedicated, appropriated, or opened to public travel or other use. . . . Our Supreme Court has stated: The plain meaning of the word highway is [a] main road or thoroughfare; hence a road or way open to the use of the public. . . . It is thus that this court has customarily understood the word. We have stated, for example, that the essential feature of a highway is that every traveler has an equal right in it with every other traveler. . . . [T]he term highway is ordinarily used in contradistinction to a private way, over which only a limited number of persons have the right to pass. . . . For an area to be open to public use it does not have to be open to everybody all the time. . . . The essential feature of a public use is that it is not confined to privileged individuals or groups whose fitness or eligibility is gauged by some predetermined criteria, but is open to the indefinite public. It is the indefiniteness or unrestricted quality of potential users that gives a use its public character. . . .

"Additionally [o]ur Supreme Court has recognized that, when the state [or municipal subdivision] either invites or reasonably should expect the public to use a particular area that is not directly in the roadway but that is a necessary incident to travel on the roadway, a defective condition therein may give rise to a cognizable action under the [applicable highway defect] statute. . . . [D]efective conditions located near the roadway, but in areas unintended for travel, are not highway defects within the ambit of the highway defect statute. . . .

"[W]hether there is a defect in such proximity to the highway so as to be considered in, upon, or near the traveled path of the highway must be determined on a case-by-case basis after a proper analysis of its own particular circumstances, and is generally a question of fact . . . ." (Citations omitted; emphasis omitted; footnote omitted; internal quotation marks omitted.) *Pramuka* v. *Cromwell*, 160 Conn. App. 863, 869–73, 127 A.3d 320, cert. denied, 320 Conn. 908, 128 A.3d 952 (2015). It is also true, however, that, although "whether a highway is defective may involve issues of fact . . . whether the facts alleged would, if true, amount to a highway defect according to the statute is a question of law . . . ." (Internal quotation marks omitted.) *Cuozzo* v. *Orange*, 147 Conn. App. 148, 159, 82 A.3d 647 (2013), aff'd, 315 Conn. 606, 109 A.3d 903 (2015).

In *Read*, this court affirmed the rendering of summary judgment in favor of the defendant town with respect to a § 13a-149 claim under circumstances, as the trial court in this case noted, that were nearly identical to those in the present case. The plaintiff in *Read* brought an action against the town of Plymouth and two employees of its department of public works, alleging that he had sustained injuries when he fell into a movable dumpster while attempting to dispose of waste at the town's transfer station. *Read* v. *Plymouth*, supra, 110

Conn. App. 659. He further alleged that he had tripped and fallen as a result of a broken or separated concrete block that formed a platform or wall above the dumpster. Id. The second count of his complaint asserted a claim against the town under § 13a-149. Id. The trial court granted the town's motion for summary judgment as to the second count, concluding that the area where the plaintiff fell did not constitute a public highway because it was within the town transfer station, access to which was limited to residents of the town who had permits. Id., 660–61. On appeal, this court affirmed that portion of the trial court's judgment. This court explained that the undisputed facts, as set forth in an affidavit of the town's former director of public works, established that the transfer station was a restricted access facility, limited to town residents who held permits and had registered their vehicles with the town, and that the transfer station was open during limited hours and, when closed, was restricted by means of a locked gate. Id., 665–66. Accordingly, this court held that, "[b]ecause there was no factual dispute that access to the transfer station was restricted and was, therefore, not open to the public, the court properly determined that the plaintiff's claim did not fall within the purview of . . . § 13a-149."[4] Id., 666.

*Read* is dispositive of this appeal. In the present case, as in *Read*, the plaintiff alleged that she suffered injuries as a result of a defective walkway located within a municipal transfer station. As in *Read*, it is undisputed that this transfer station is accessible only to city residents who have permits; that it is open only during limited hours; and that, when closed, its gates are shut

---

[4] Judge Lavery dissented. He contended that "[t]he fact that the [transfer] station has limited use and requires a local permit does not diminish its public use character" because residents of the town were required to use it as the disposal site for their solid waste, and "[e]very citizen of Connecticut has to have access to such a place." *Read* v. *Plymouth*, supra, 110 Conn. App. 667 (*Lavery, J.*, dissenting).

and locked. Therefore, under *Read*, the plaintiff's claim does not fall within the purview of § 13a-149, and the trial court did not err in granting the defendants' motion for summary judgment as to count one of the complaint.

We are not persuaded by the plaintiff's arguments to the contrary. The plaintiff argues that to deem the transfer station, and the walkways located therein, not open to public use, "especially where the access restrictions thereto are indisputably de minimis," is to read § 13a-149 in an unduly harsh and restrictive manner. To the extent that the plaintiff asks us to overrule *Read*, however, it is the well settled policy of this court that we must follow this court's precedent unless en banc review is granted. See, e.g., *State* v. *Gonzalez*, 214 Conn. App. 511, 524, 281 A.3d 501 ("It is well established . . . that one panel of this court cannot overrule the precedent established by a previous panel's holding. . . . As we often have stated, this court's policy dictates that one panel should not, on its own, reverse the ruling of a previous panel. The reversal may be accomplished only if the appeal is heard en banc." (Internal quotation marks omitted.)), cert. denied, 345 Conn. 967, 285 A.3d 736 (2022). The plaintiff also emphasizes what she describes as the "trivial" nature of the restrictions on accessing the transfer station—namely, the allegedly low cost of the permits and the fact that the transfer station is open six days and more than forty hours per week—but there is nothing in this court's opinion in *Read* to suggest that the holding in that case turned on the transfer station's precise number of hours of operation or the precise cost of the permits required to access it.[5] Moreover, although the plaintiff correctly

---

[5] In support of her argument that the transfer station should be considered a public place, the plaintiff further asserts in her brief that "she was required to use the transfer station to dispose of solid trash." The defendants dispute this assertion in their principal appellate brief, and we are unable to find any support for it in the affidavits or other documentary exhibits submitted by the parties in connection with the defendants' motion for summary judgment. Even if it were true, however, that the plaintiff was required to

notes that, under this court's precedent, "[f]or an area to be open to public use it does not have to be open to everybody all the time"; (internal quotation marks omitted) *Cuozzo* v. *Orange*, supra, 147 Conn. App. 158; it is equally well established that "[t]he essential feature of a public use is that it is *not confined to privileged individuals or groups whose fitness or eligibility is gauged by some predetermined criteria*, but is open to the indefinite public." (Emphasis added; internal quotation marks omitted.) Id. Because it is undisputed that the transfer station in the present case is, like the transfer station in *Read*, accessible only to city residents who have purchased a permit—that is, to a group whose eligibility is gauged by predetermined criteria—it lacks the " 'essential feature' " that would qualify it as open to public use for purposes of § 13a-149. Id.

The plaintiff also cites this court's decision in *Pramuka* v. *Cromwell*, supra, 160 Conn. App. 872–76, for the proposition that "a determination of whether a road is open to the public, or whether there are 'sufficient' restrictions that would limit its public availability, involves questions of fact that are more appropriately answered by a jury at trial, and ought not be decided by summary judgment." In *Pramuka*, this court determined that the trial court improperly rendered summary judgment in favor of the defendants, the town of Cromwell and the town's board of education, in a § 13a-149 action in which the plaintiff alleged that she had sustained injuries while walking on a walkway from a

use the transfer station to dispose of her waste, to conclude on that basis that the transfer station was public would be to adopt as the law the reasoning of Judge Lavery's dissenting opinion in *Read*—which argued that the transfer station in that case should be deemed public for the same reason. See footnote 4 of this opinion. We decline to do so because "[i]t is axiomatic that a dissenting opinion, by its very nature, represents a minority of the court's *disagreement* with the law as established by the majority opinion and, therefore, is not an authoritative ruling . . . ." (Emphasis in original.) *Reville* v. *Reville*, 312 Conn. 428, 459 n.29, 93 A.3d 1076 (2014).

designated parking area to the entrance of a public elementary school. *Pramuka* v. *Cromwell*, supra, 865–66. "On the face of the record before [it]"; id., 865; this court concluded that there were material issues of fact because the record did not contain sufficient information as to whether the parking lot or the driveway(s) abutted by the walkway on which the plaintiff had fallen, which were on the property of the school, were open to the public or contained sufficient restrictions that would limit their public availability. Id., 878.

This court in *Pramuka* did not hold, however, that the question of whether a particular area is open to public use for purposes of § 13a-149 is *categorically* incapable of resolution on a motion for summary judgment. To the contrary, this court and our Supreme Court repeatedly have concluded that a plaintiff's claims fall outside the purview of our highway defect statutes when, prior to trial, the undisputed facts clearly established that an alleged injury occurred in an area that was not open to public use under Connecticut case law interpreting and applying those statutes. See, e.g., *Kozlowski* v. *Commissioner of Transportation*, 274 Conn. 497, 505–506, 876 A.2d 1148 (2005) (remanding with direction to grant motion to dismiss in action predicated on state highway defect statute, General Statutes § 13-144, when undisputed facts established that "the public is neither invited nor expected to traverse" area where plaintiff's alleged injury occurred); *Read* v. *Plymouth*, supra, 110 Conn. App. 666 (trial court properly rendered summary judgment in favor of defendant with respect to § 13a-149 claim because undisputed facts showed that transfer station was not open to public).[6]

---

[6] The plaintiff also directs our attention to a trial court decision, *Covello* v. *Darien*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-08-5008909-S (October 22, 2010) (51 Conn. L. Rptr. 40, 44), in which the court denied the defendant town's motion for summary judgment with respect to a § 13a-149 claim arising from a fall on a municipal road in the town's transfer station, notwithstanding the existence of access restrictions on the transfer station analogous to those in *Read* and the present case.

The plaintiff's reliance on *Pramuka* is therefore misplaced.

The judgment is affirmed.

In this opinion the other judges concurred.

——————————————

The court in *Covello* purported to distinguish *Read* on the basis that the plaintiff in *Read* had not fallen on a sidewalk or highway where vehicles traveled, but rather on a path near a dumpster, whereas the plaintiff in *Covello* had fallen on a road within the transfer station along which vehicles traveled. Id., 43–44. Our research does not reveal that *Covello* has been cited in any decisions of this court or our Supreme Court, and its reasoning does not bind us. We note, however, that it is undisputed that the plaintiff in the present case fell, not on a road, but on a walkway directly in front of a cardboard waste receptacle. Therefore, even if we were to endorse the court's attempt in *Covello* to distinguish *Read*, the present case clearly is more factually similar to *Read* than to *Covello*.